DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INNOVATIVE COMMUNICATION | ) | Bankruptcy No. 3:07-30012 |
| CORPORATION, | ) | |
| | ) | Adv. No. 3:08-03004 |
| Debtor. | ) | |
| ————————————— | ) | |
| | ) | |
| LYNDON ADRIAN PROSSER, | ) | |
| MICHELLE LABENNETT PROSSER, | ) | |
| SYBIL G. PROSSER, and JOHN | ) | |
| JUSTIN PROSSER, | ) | |
| | ) | |
| Appellants, | ) | Civil No. 2012-51 |
| | ) | |
| v. | ) | |
| | ) | |
| STAN SPRINGEL, CHAPTER 11 | ) | |
| TRUSTEE; THE BANKRUPTCY | ) | |
| ESTATE OF INNOVATIVE | ) | |
| EMERGING COMMUNICATIONS, | ) | |
| INC., and INNOVATIVE | ) | |
| COMMUNICATION COMPANY, LLC, | ) | |
| | ) | |
| Appellees. | ) | |
| ————————————— | ) | |

ATTORNEYS:

**Leigh F. Goldman, Esq.**
Goldman Law Offices, Inc.
St. Thomas, USVI
    *For Lyndon Prosser, Michelle Prosser, Sybil Prosser, and*
    *John Prosser.*

**Daniel C. Stewart**
**Michaela C. Crocker, Esq.**
Vinson & Elkins, LLP
Dallas, TX
    *For Stan Springel, Chapter 11 Trustee.*

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 2

### <u>MEMORANDUM OPINION</u>

**GÓMEZ, J.**

Before the Court is the appeal of Lyndon Prosser, Michelle Prosser, Sybil Prosser, and John Prosser (collectively referred to as "the Prossers") from the Bankruptcy Division's August 5, 2011, Summary Judgment regarding alleged fraudulent conveyances.

### I.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

This appeal arises out of the lengthy, and ongoing, bankruptcy of Innovative Communication Corporation ("ICC"), a Virgin Islands telecommunications company, and its former owner and chief executive officer, Jeffrey Prosser.

On October 19, 2007, the appellee Stan Springel, as the Chapter 11 Trustee of the Bankruptcy Estates of ICC, as well as the related entities Emerging Communications, Inc., and Innovative Communication Company, LLC, initiated an adversary proceeding against the Prossers. James P. Carroll, the Chapter 7 Trustee of the Bankruptcy Estate of Jeffrey Prosser subsequently joined the adversary proceeding as a co-plaintiff. Together, Springel and Carroll asserted, among other things, several claims that sought to turn over property from the Prossers to

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 3

the bankruptcy estate[1] pursuant to Title 11, Section 542 of the United States Code.[2]

On August 5, 2011, the United States Bankruptcy Court for the District of the Virgin Islands (the "Bankruptcy Division") entered a "Memorandum Opinion and Judgment Order," (Doc. No. 119) allowing Springel to recover certain unauthorized post-petition transfers from the Prossers.

On July 13, 2012, the Prossers filed a notice of appeal.

On July 16, 2012, the Clerk of the Court issued a scheduling order (the "Scheduling Order"). The Scheduling Order required the Prossers to file and serve the designation of record and a statement of issues within 10 days of the date of the order, "failing which the Appeal may be dismissed for failure to prosecute." Further, the Scheduling Order required

---

[1] Specifically, Springel seeks to avoid and recover transfers made to or for the benefit of Lyndon Adrian Prosser, Michelle LaBennett Prosser, Sybil G. Prosser, and John Justin Prosser.
[2] In pertinent part, 11 U.S.C. § 542 ("Turnover of property to the estate") provides that
> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
11 U.S.C. § 542 (a).

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 4

the Prossers to file and serve their brief within 30 days of the
order.

The Prossers failed to fully comply with the Scheduling
Order. They filed their designation of record and statement of
issues. They did not file their brief.

Because the Prossers failed to file their appellants'
brief, the Court entered an order on December 12, 2012, that
ordered the Prossers to, "no later than December 28, 2012, show
cause in writing why this matter should not be dismissed for
failure to prosecute." (ECF No. 7.)

On March 18, 2013, the Prossers filed a motion requesting
that the Court extend its December 28, 2012, deadline for them
to show cause. The Prossers explained that they learned only the
day before from another attorney that their attorney, Leigh
Goldman, failed to timely respond to the December 12, 2013,
Order to Show Cause. The Prossers sought an extension so they
could have time to find new counsel.

On March 26, 2013, the Court granted a 60-day extension
beginning March 26, 2013, for the Prossers to file and serve on
Springel their Appellants' Brief. The Court advised that a
failure to comply with its order could result in dismissal of
the case for failure to prosecute.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 5

On May 29, 2013, and May 30, 2013, after the extended
deadline had passed, each Prosser filed a motion requesting that
the Court again extend the deadline to file their Appellants'
Brief, this time to July 24, 2013. The Prossers explained that
the issues involved in the appeal are complex and that many
local attorneys are unable because of conflicts of interest to
represent them, or unwilling. Therefore, they requested more
time.

As of the date of this order, the Prossers have violated
each of the deadlines set by the Court to file their appellants'
brief. Over fourteen months have passed since the Prossers filed
their notice of appeal.


## II.   JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to review the "final judgments,
orders, and decrees" of bankruptcy courts pursuant to section
158(a) of Title Twenty-Eight of the United States Code.[3]

The Court will review the bankruptcy court's findings of
fact for clear error and will exercise plenary review over
questions of law. *In re Barbel*, Civ. No. 01-221 (RLF) 2004 U.S.

---

[3] Title 28, Section 158 of the United States Codes provides, in pertinent
part: "[t]he district courts of the United States shall have jurisdiction to
hear appeals . . . of bankruptcy judges entered in cases and proceedings
referred to the bankruptcy judges under [28 U.S.C. § 157]. An appeal under
this subsection shall be taken only to the district court for the judicial
district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a).

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 6

Dist. LEXIS 19417, at *2 (D.V.I. Sept. 21, 2004) ("A district court reviews the Bankruptcy Division's conclusions of law *de novo* but may only review findings of fact that are clearly erroneous." (citing Fed. R. Bankr. P. 8013; *In re Excalibur Auto. Corp.*, 859 F.2d 454, 457 (7th Cir. 1988)), *aff'd* 183 Fed. App'x 227 (3d Cir. 2006). "[A] bankruptcy court's exercise of its equitable power is reviewed only for an abuse of discretion." *In re Mou San Rim*, Civ. No. 10-1066 (DMC), 2010 U.S. Dist. LEXIS 117458, at *3-4 (D.N.J. Nov. 3, 2010).

A motion for relief from judgment is ordinarily addressed to the sound discretion of the trial judge. However, if the court was powerless to enter the judgment in the first instance, the judgment is void and "the trial judge has no discretion and must grant appropriate . . . relief." *Textile Banking Co. v. Rentschler*, 657 F.3d 844, 851 (7th Cir. 1981) (citing *In re Four Seasons Sec. Law Litig.*, 502 F.2d 834 (10th Cir.), *cert. denied*, 419 U.S. 1034 (1974)).

## III. <u>DISCUSSION</u>

"Under Rule 8001(a)[4] of the Federal Rules of Bankruptcy Procedure, the District Court is empowered to dismiss an appeal

---

[4] "An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel ... shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002. An appellant's failure to take any step other than timely filing a notice of

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 7

for failure to prosecute or otherwise follow the procedures set

out in the Bankruptcy Rules**.**" *In re Richardson Industrial*

*Contractors, Inc.*, 189 Fed. App'x 93, at *96 (3d Cir. 2006).

Before such a dismissal occurs, however, a district court must

consider six factors outlined in *Poulis v. State Farm Fire and*

*Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984). In *Poulis*, the Third

Circuit stated that a district court must balance the following

factors:

> 1) the extent of the *party's* personal *responsibility*;
> (2) the *prejudice* to the adversary caused by the
> failure to meet scheduling orders and respond to
> discovery; (3) a *history* of dilatoriness; (4) whether
> the conduct of the party or the attorney was *willful*
> or in *bad faith*; (5) the effectiveness of sanctions
> other than dismissal, which entails an analysis of
> *alternative sanctions*; and (6) the *meritoriousness* of
> the claim or defense.

*Id.* (explaining that "dismissal is a drastic sanction and should

be reserved for those cases where there is a clear record of

delay or contumacious conduct by the plaintiff") (alteration in

original); *see also In re E Toys Inc.,* 263 Fed. App'x 235, 237,

2008 WL 241367 at *2 (3d Cir. Jan. 30, 2008) (affirming the

---

appeal does not affect the validity of the appeal, but is ground only for
such action as the district court or bankruptcy appellate panel deems
appropriate, which may include dismissal of the appeal...." Fed. R. Bankr. P.
8001(a) (2011).

district court's dismissal of a bankruptcy appeal for failure to prosecute upon consideration of the *Poulis* factors).

"Not all of the[] *Poulis* factors need be met for a district court to find dismissal is warranted." *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir. 1988). However, courts must consider and balance all six *Poulis* factors before dismissing a case with prejudice, and all doubts must be resolved in favor of adjudication on the merits. *See $8,221,877.16 in U.S. Currency,* 330 F.3d 141, 161 (3d Cir. 2003) ("[W]e have always required consideration and balancing of all six of the factors, and have recommended the resolution of any doubts in favor of adjudication on the merits."); *see also Bjorgung*, 197 Fed. App'x at 125-26 ("Although '[n]ot all of the Poulis factors need be satisfied in order to dismiss a complaint' they must all be considered") (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).

## IV.  <u>ANALYSIS</u>

In *In re Richardson Industrial Contractors, Inc.*, 189 Fed. Appx. 93 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit addressed the relevant factors that a district court must consider before dismissing a bankruptcy appeal for failure to prosecute. In that case, the district court dismissed a creditor's appeal with prejudice for failure to comply with

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 9

the mandates of the Federal Rules of Bankruptcy Procedure. In so

doing, the district court considered only two of the six *Poulis*

factors: the creditor's bad faith in requesting a second

extension of time in which to file his brief and the

ineffectiveness of alternative sanctions. The creditor appealed

the district court's decision.

On appeal, the Third Circuit found that, in addition to not

considering all six *Poulis* factors, the district court's

discussion of two factors was limited and did not set out the

basis for its conclusions in such a way to permit meaningful

review of its decision. The Third Circuit vacated the District

Court's order and remanded it for further proceedings. *In re*

*Richardson Indus. Contractors, Inc.*, 189 F. App'x 93, 97 (3d

Cir. 2006).

Ordinarily, a district court must balance all six *Poulis*

factors when determining whether a party has failed to prosecute

a matter. *Id.* (quoting *United States v. $8,221,877.16 in United*

*States Currency,* 330 F.3d 141, 162 (3d Cir.2003)) ("[W]e have

always required consideration and balancing of *all six* of the

factors, and have recommended the resolution of any doubts in

favor of adjudication on the merits."). The Third Circuit has

noted the particular importance of the third factor, the party's

history of dilatoriness, in the overall balancing of the six

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 10

*Poulis* factors. *Richardson Indus. Contractors, Inc.*, 189 F.
App'x 93, 97 (3d Cir. 2006). The *Richardson* Court noted that
"'[d]ismissal typically occurs in cases showing consistently
dilatory conduct or the complete failure to take any steps other
than the mere filing of a notice of appeal.'" *Richardson*, 189
Fed. Appx. 93, at *97 (quoting *In re Beverly Mfg. Corp.*, 778
F.2d 666, 667 (11th Cir. 1985)**;** *see also Nielsen v. Price*, 17
F.3d 1276, 1277 (10th Cir. 1994) (upholding dismissal of
bankruptcy appeal for failure to follow Bankruptcy Rules or
timely file appeal brief where plaintiffs provided no
explanation or excuse for noncompliance); *In re Champion*, 895
F.2d 490, 492 (8th Cir. 1990) (finding no abuse of discretion in
dismissing appeal where appellant had not filed designation of
record or statement of issues required by Bankruptcy Rule 8006);
*In re Tampa Chain Co.*, 835 F.2d 54, 56 (2d Cir. 1987) (affirming
dismissal of bankruptcy appeal for failure to file a brief for
seven months after the due date or provide any explanation for
the failure, even after the court's inquiry into delinquency).

The Court will apply each of the *Poulis* factors to the
facts of the instant appeal.

### 1. *Personal Responsibility*

The first *Poulis* factor assesses the extent of the
appellant's personal responsibility. *Poulis v. State Farm Fire*

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 11

*and Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984). The Prossers suggest their attorney is partly to blame for their failure to comply with the Court's December 12, 2012, order. The Prossers' "lack of responsibility for [its] counsel's dilatory conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel." *See Poulis*, 747 F.2d at 868; s*ee also Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)("[E]ven assuming that WCI does not bear responsibility for its counsel's conduct, consideration of the remaining factors still compels affirming the District Court's decision to sanction WCI and dismiss the breach of contract claim."); *cf. Lee v. Sunrise Senior Living*, 2011 U.S. App. LEXIS 25662, *5 (3d Cir. Nov. 9, 2011)(finding that the pro se plaintiff was "fully responsible for her conduct.")

Based on the representations in the record, the Prossers' conduct indicates they failed to monitor their case. There is no indication in the record of whether the Prossers' failure to prosecute is the result of their attorney's neglect or their own inattention. As such, the Court cannot find that the Prossers' personal responsibility weighs in favor of dismissal.

## 2. Prejudice

The second *Poulis* factor considers prejudice to the appellee caused by the appellant's failure to meet scheduling

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 12

orders and respond to discovery. *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984). Prejudice for the purpose of the *Poulis* factors "does not mean 'irremediable harm.'" *See Ware*, 322 F.3d at 222; *see also Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693-94 (3d Cir. 1988) (rejecting the argument that "the district court should not have dismissed its claim . . . unless the harm to the other parties amounted to 'irremediable prejudice'"). Rather, the burden imposed by impeding the opposing party's ability to prepare a meaningful litigation strategy has been held to be sufficiently prejudicial. *See Ware,* 322 F.3d at 222.

The Prossers have had three deadlines by which they were to file their briefs. They have yet to comply with any. Their conduct has prejudiced Springel by hampering his ability to resolve the underlying bankruptcy matter and impeding Springel's ability to formulate a strategy on appeal. *See Lee*, 2011 U.S. App. LEXIS 25662, at *5 (finding that the plaintiff's conduct prejudiced the defendants by "impeding their efforts to resolve [the] case, causing them to file unnecessary motions, and requiring them to incur extra expenses.") The Prossers' lengthy delay has had an impact on the Bankruptcy Division's proceedings. Thus, the Court finds that the second *Poulis* factor weighs in favor of dismissal.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 13

### 3. History of Dilatoriness

The third *Poulis* factor considers the appellant's history of dilatoriness. *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984). The Prossers did not file their brief within the original time period set by the Court. The Prossers also failed to move for an extension of time within which to file its brief until more than three months *after* the Court's first deadline. When the Court granted the Prossers an extension, the Prossers again failed to file a brief. They again failed to move for an extension of time until *after* the Court's deadline had passed. The Prossers each state that they "make no effort to delay these proceedings," yet they have missed nearly all of the deadlines set by the Court in this matter.

The Prossers have had a sufficient history of dilatoriness in this matter such that the third *Poulis* factor weighs in favor of dismissal. *See, e.g., Buccolo*, 308 Fed. Appx. 574, at *575 (affirming district court's dismissal of the bankruptcy appeal for failure to prosecute where appellant "did not comply with the Bankruptcy Rules for filing a brief within 15 days of the docketing of his appeal... or for providing for the transcript of the Bankruptcy Court proceedings..." noting that "[e]ither of these violations is grounds for dismissal under Bankruptcy Rule 8001").

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 14

### 4. Willfulness and Bad Faith

The fourth *Poulis* factor considers whether the conduct of
the appellant or of the appellant's attorney was willful or in
bad faith. *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863,
868 (3d Cir. 1984). The Prossers failed to comply with the
Court's original scheduling order. The Prossers failed to move
for an extension of time within which to file its brief until
more than three months after the original filing deadline. The
Prossers failed to comply with the Court's new scheduling order.
The Prossers explain that they have had trouble finding a lawyer
willing to and able to represent them. The Prossers' explanation
for their delays is unpersuasive. They have repeatedly failed to
comply with the Court's orders to file briefs and have twice
moved for an extension of time in an untimely manner.

By failing to file appellants' briefs or timely move for an
extension of time within which to do so, the Prossers have
demonstrated a willful disregard for the Court's scheduling
orders and for the appellate process in general. *See, e.g., In
re Toys Inc.,* 263 Fed. Appx. at 238 (finding that "the record
provides a basis to conclude that [the appellant's] conduct
showed willful disregard for the appellate process" because
"[h]e ignored the deadlines issued by the District Court"). The
fourth *Poulis* factor therefore weighs in favor of dismissal.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 15

## 5. Effectiveness of Alternative Sanctions

The fifth *Poulis* factor assesses the effectiveness of
sanctions other than dismissal. *Poulis v. State Farm Fire and
Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984). The Prossers have
not suggested any sanctions. A possible alternative to dismissal
would be to grant the Prossers an extension of time within which
to file their appellants' briefs. However, the Court has already
granted two such extensions. Granting any further extension
would reward the Prossers' blatant failure to comply with this
Court's orders by allowing it to file an opening brief more than
14 months after the commencement of its appeal.

The Court could consider the propriety of ordering the
Prossers to pay Springel's attorney's fees associated with
filing the instant motion. *See Poulis*, 747 F.2d at 869. The
ineffectiveness of the Court's prior orders setting deadlines
for the Prossers to file their appellants' briefs gives the
Court reason to doubt the effectiveness of such sanctions.

The Prossers have demonstrated little urgency in litigating
their appeal. They have twice failed to file timely briefs. As
such, the Court doubts the effectiveness of alternative
sanctions. *Cf. Richardson*, 189 Fed. Appx. 93, at *98 (finding
dismissal inappropriate where appellant requested two extensions

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 16

and filed his brief prior to the District Court's order of
dismissal). Based on the Prossers' conduct thus far it is not
evident that alternative sanctions will prompt them to take
action in prosecuting this appeal. Thus, the ineffectiveness of
alternative sanctions weighs in favor of dismissal.

## 6. Merit of Prossers' Appeal

The sixth *Poulis* factor considers the meritoriousness of the
appellant's claim. *Poulis v. State Farm Fire and Cas. Co.*, 747
F.2d 863, 868 (3d Cir. 1984). "Ordinarily, '[a] claim, or
defense, will be deemed meritorious when the allegations of the
[motion], if established [], would support recovery by plaintiff
or would constitute a complete defense." *Buccolo*, 308 Fed. Appx.
574, at n.1 (quoting *Poulis*, 747 F.2d at 869-70).
Below, Springel filed an adversary proceeding against the
Prossers. Springel sought to recover fraudulent pre-petition
transfers and unauthorized post-petition transfers from the
Prossers.

In an "August 5, 2011, Memorandum Opinion and Judgment
Order," the bankruptcy court found that

> the Chapter 11 Trustee met his burden as to certain of
> the transfers identified and established multiple
> fraudulent conveyances and post-petition transfers
> which he is entitled to avoid and recover from the
> Defendants as provided herein. As to other transfers
> addressed, he has not met his burden for the reasons
> expressed in this Memorandum Opinion.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 17

(Aug. 5, 2011, Bankr. Mem. Op. and Order 2, ECF No. 1-1.)

The Prossers identify numerous issues on appeal. The Court will address each of those issues in turn.

### a. Bankruptcy Court's Jurisdiction

The first two issues that the Prossers identify on appeal concern the bankruptcy court's jurisdiction. The Prossers ask

1.  Did the Bankruptcy Court have the subject-matter jurisdiction (the Constitutional capacity to exercise the statutory jurisdiction pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (U.S. 2011)) to adjudicate the cause of action – a fraudulent conveyance cause of action adjudicated pursuant to 28 U.S.C. § 157(b)(2)(H)?

2.  Did the Bankruptcy Court have the subject-matter jurisdiction (the Constitutional capacity to exercise the statutory jurisdiction pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (U.S. 2011)) to issue a Report and Recommendation pursuant to 28 U.S.C. § 157(c) to adjudicate the cause of action – a fraudulent conveyance cause of action adjudicated pursuant to 28 U.S.C. § 157(b)(2)(H)?

(Statement of Issues, ECF No. 5.)

Whether bankruptcy court jurisdiction exists is a question of law that a district court reviews de novo. *In re RFE Industries, Inc.*, 283 F.3d 159, 163 (3d Cir. 2002). According to 28 U.S.C.A. § 157,

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to--

    (A) matters concerning the administration of the estate;

    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

    (C) counterclaims by the estate against persons filing claims against the estate;

                    . . .

    (E) orders to turn over property of the estate;

    (F) proceedings to determine, avoid, or recover preferences;

                    . . .

    (H) proceedings to determine, avoid, or recover fraudulent conveyances;

                    . . .

    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

                    . . .

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 19

> (3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

28 U.S.C.A. § 157 (a), (b)(1)-(3).

In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), Vickie Lynn Marshall ("Marshall") brought an adversary proceeding in her Chapter 11 bankruptcy case to recover for her stepson's tortious interference with her expectancy of inheritance or gift from her deceased husband. The bankruptcy court entered judgment for Marshall. The stepson appealed. The district court treated the bankruptcy court's judgment as proposed findings of fact and conclusions of law and adopted them as modified. Both parties appealed. The U.S. Court of Appeals for the Ninth Circuit vacated the district court's judgment. The U.S. Supreme Court granted certiorari.

On appeal, the Supreme Court first considered whether the bankruptcy judge was statutorily authorized to render a final judgment on Marshall's counterclaim. "The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved." *Stern*, 131 S. Ct. at 2603. Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 20

under title 11." 28 U.S.C. § 157(b)(1). "Core proceedings

include, but are not limited to" sixteen different types of

matters enumerated by Title 28, Section 157(b)(2) of the United

States Code ("Section 157(b)(2)"). *Id.* at § 157(b)(2). The

statute specifically lists as a core proceeding "counterclaims

by [a debtor's] estate against persons filing claims against the

estate." *Id.* at § 157(b)(2)(C). The Court thus held that

Marshall's counterclaim was a "core proceeding" and the

bankruptcy judge had the statutory authority to render a final

judgment upon it.

The Supreme Court then went on to consider whether the

exercise of that statutory authority was constitutionally

permissible. The Court concluded that Marshall's claim could not

be fully adjudicated by the bankruptcy judge. Within the

confines of Article III of the Constitution, Congress could only

assign to the bankruptcy judges those matters involving "public

rights." These included matters which "can be pursued only by

the grace of the other branches," not matters which

"historically could have been determined exclusively by" those

other branches. *Stern*, 131 S. Ct. at 2614 (internal quotation

marks omitted). Marshall's "claimed right to relief does not

flow from a federal statutory scheme" and neither was it

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 21

"completely dependent upon adjudication of a claim created by federal law." *Id.* (internal quotation marks omitted).

The Court also noted that Marshall's claim was not "limited to a particularized area of the law" in which "Congress devised an 'expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination by an administrative agency specially assigned to that task.' " *Id.* (quoting *Crowell v. Benson*, 285 U.S. 22, 46 (1932)). Instead, the Court concluded that "this case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." *Stern*, 131 S. Ct. at 2615 (emphasis original). The Court explained in its conclusion that the question before it was "a 'narrow' one." *Stern*, 131 S. Ct. at 2620.

In the present case, then, the Court's inquiry is also a narrow one. First, the Court must determine whether Springel's fraudulent conveyance action is a core proceeding. If so, the Court must then determine whether fraudulent conveyance actions involve public rights such that they may be constitutionally adjudicated in bankruptcy courts.

### i. *Statutory Jurisdiction*

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 22

Section 157(b)(2) lists as "core" "proceedings to determine, avoid, or recover fraudulent conveyances." *Id*. at § 157(b)(2)(H). As a general matter, fraudulent conveyance actions are core proceedings and bankruptcy courts may statutorily enter final judgments in such actions.

Indeed, the Prossers do not argue that the bankruptcy courts lack the statutory authority to enter judgments in such actions. Rather, they suggest in their Statement of Issues that bankruptcy courts are devoid of the constitutional capacity to enter final judgments in fraudulent conveyance actions.

### ii. *Constitutional Jurisdiction*

Having determined that the bankruptcy court was statutorily authorized to enter final judgments in fraudulent conveyance actions, the Court must next determine whether Article III permits Congress to delegate such jurisdiction to bankruptcy courts.

"[I]n general, Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.' " *Stern*, 131 S. Ct. at 2609 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)). "When a suit is made of 'the stuff of the traditional actions at common law . . . ' and is brought within the bounds of federal jurisdiction, the

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 23

responsibility for deciding that suit rests with Article III

judges in Article III courts." *Stern*, 131 S. Ct. at 2609

(quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458

U.S. 50, 90 (Rehnquist, J., concurring in judgment)). "At the

same time, there are matters, involving public rights, which may

be presented in such form that the judicial power is capable of

action on them, and which are susceptible of judicial

determination, but which congress may or may not bring within

the cognizance of the courts of the United States, as it may

deem proper." *Murray's Lessee*, 59 U.S. at 284.

As outlined above, a matter may involve public rights if it

"flow[s] from a federal statutory scheme" or is "completely

dependent upon adjudication of a claim created by federal law."

*Stern*, 131 S. Ct. at 2614. (internal quotation marks omitted).

Thus, the issue here is whether fraudulent conveyance actions

involve public rights such that they may be constitutionally

adjudicated in bankruptcy courts.

Prior to its *Stern* decision, the Supreme Court, in

*Granfinanciera, S.A. v. Nordberg*, 109 S. Ct. 2782 (1989) had

occasion to address that very issue. Indeed, the *Granfinanciera*

court explained that

> There can be little doubt that fraudulent conveyance
> actions by bankruptcy trustees-suits which, we said in
> *Schoenthal v. Irving Trust Co.*, 287 U.S., at 94-95, 53
> S.Ct., at 51 (citation omitted), "constitute no part

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 24

> of the proceedings in bankruptcy but concern
> controversies arising out of it" - are
> quintessentially suits at common law that more nearly
> resemble state - law contract claims brought by a
> bankrupt corporation to augment the bankruptcy estate
> than they do creditors' hierarchically ordered claims
> to a pro rata share of the bankruptcy res. *See Gibson*
> 1022-1025. They therefore appear matters of private
> rather than public right.

*Granfinanciera*, 109 S. Ct. at 2798.

Post-*Stern*, the Court of Appeals for the Ninth Circuit, in

*In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553 (9th Cir.

2012), relied on the *Granfinanciera* and *Stern* decisions in

holding that the bankruptcy courts are without constitutional

authority to enter final judgment in fraudulent conveyance

actions.[5] In *Bellingham*, the bankruptcy trustee filed a

fraudulent transfer complaint to recover commissions deposited

---

[5] The Sixth Circuit has discussed the issue in dicta, stating that

> Next came *Granfinanciera, S.A. v. Nordberg*, which held that the
> public-rights doctrine does not allow a bankruptcy court to
> decide a fraudulent-conveyance claim filed by a bankrupt estate's
> trustee against a non-creditor. 492 U.S. 33, 55 (1989). By means
> of such a claim, the estate seeks to recover property that the
> debtor transferred in anticipation of bankruptcy. Fraudulent-
> conveyance claims, *Granfinanciera* said, "constitute no part of
> the proceedings in bankruptcy." *Id*. at 56. They are
> "quintessentially suits at common law that more nearly resemble
> state-law contract claims ... to augment the bankruptcy estate
> than they do creditors' hierarchically ordered claims to a pro
> rata share of the bankruptcy res." *Id*. Thus, only an Article III
> court can enter final judgment on such a claim. (*Granfinanciera*
> actually involved the limits of the bankruptcy court's equity
> jurisdiction for Seventh Amendment purposes, not the limits of
> the bankruptcy court's authority for purposes of Article III. But
> the Supreme Court stated that the analysis for each is the same.
> *See id*. at 53-54.)

*Waldman v. Stone*, 698 F. 3d 910, 918-19 (6th Cir. 2012).

into the account of a non-creditor as property of the Chapter 7 estate. The bankruptcy court granted summary judgment in favor of the trustee. The non-creditor appealed. The district court affirmed. The non-creditor appealed once again.

On review, the court explained that "*Granfinanciera* clarified that fraudulent conveyance actions are not matters of public right, and that a noncreditor retains a Seventh Amendment right to a jury trial on a bankruptcy trustee's fraudulent conveyance claim." *Bellingham*, 702 F.3d at 562. The Ninth Circuit concluded that, "[t]aken together, *Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final judgments on fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate. They do not." *Bellingham*, 702 F.3d at 565. The Court further articulated that

> Fraudulent conveyance claims are "quintessentially suits at common law" designed to "augment the bankruptcy estate." *Granfinanciera*, 492 U.S. at 56, 109 S.Ct. 2782. Thus, Article III bars bankruptcy courts from entering final judgments in such actions brought by a noncreditor absent the parties' consent.

*Bellingham*, 702 F.3d at 572.

The *Bellingham* court then turned to the question of "whether bankruptcy judges may constitutionally hear such claims, and prepare recommendations for de novo review by the federal district courts." *Id*. Relying again on the holding in

*In re Innovative*
Civil No. 2012–51
Memorandum Opinion
Page 26

*Stern*, the *Bellingham* court concluded that "bankruptcy courts have statutory authority to hear and enter proposed findings of fact and conclusions of law in a fraudulent conveyance proceeding asserted by a bankruptcy trustee against a noncreditor, subject to de novo review by a federal district court." *Id.* at 566.

In light of clear authority, this Court is persuaded that bankruptcy courts may only enter final judgments in fraudulent conveyance actions with the consent of the parties. Here, there is no record evidence that the Prossers consented to such an exercise of jurisdiction. As such, the Prossers' first issue weighs against dismissal.[6]

The Prossers' next issue involves a bankruptcy court's jurisdiction to issue reports and recommendations in fraudulent conveyance actions. It is unclear from the record whether there is a bankruptcy Report and Recommendation before this Court.

---

[6] It is worth noting that in certain types of actions where a bankruptcy court enters an order or judgment which exceeds its authority, that order or judgment may be regarded as a report and recommendation by the reviewing district court. *See, e.g.*, *In re Toledo*, 170 F.3d 1340, 1350 (11th Cir. 1999) (remanding "with instructions to the district court to treat the bankruptcy court's . . . 'judgments' granting [relief], as merely proposed findings of fact and conclusions of law . . ."). That approach has been accepted by at least one Court of Appeals in cases concerning a bankruptcy court's entry of final judgment in a fraudulent conveyance action. *See, e.g.*, *Waldman v. Stone*, 698 F.3d 910, 922 (6th Cir. 2012) (ordering that on remand the bankruptcy court's judgment is to be cast as proposed findings of fact and conclusions of law and reviewed de novo by the district court). Accordingly, the first issue may *arguably* neither favor nor disfavor dismissal.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 27

Indeed, in the Prossers' Notice of Appeal, they indicate that
they seek to appeal only "the August 5, 2011 MEMORANDUM OPINION
AND JUDGMENT ORDER DE 119, filed in the District Court of the
Virgin Islands, Bankruptcy Division, Division of St. Thomas and
St. John by the Hon. Judith K. Fitzgerald, Bankruptcy Court
Judge (a copy of which is annexed hereto as Exhibit 'A')."
(Notice of Appeal, ECF No. 1.) However, attached to the
Prossers' Notice of Appeal is an Exhibit "A" which includes the
bankruptcy court's August 5, 2011, Memorandum Opinion, its
August 5, 2011, "Judgment Order," *and* its August 5, 2011,
"Recommendation to the District Court as to Counts III, IV, and
V to Avoid and Recover Fraudulent Transfers Pursuant to §544 and
Applicable Law." (ECF No. 1-1.)

To the extent that the August 5, 2011, Report and
Recommendation is properly before this Court on appeal, the
Court is not persuaded that there is any merit to the Prossers'
second issue. Specifically, as articulated by the Ninth Circuit,
bankruptcy courts may "hear and enter proposed findings of fact
and conclusions of law in a fraudulent conveyance
proceeding . . ., subject to de novo review by a federal
district court." *Bellingham*, 702 F.3d at 566.

To the extent that the August 5, 2011, Report and
Recommendation is not properly before this Court on appeal, the

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 28

Court need not reach the Prossers' second issue on appeal. *See*

*Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (explaining that "a

federal court has neither power to render advisory opinions nor

to decide questions that cannot affect the rights of litigants

in the case before them.") (internal citations omitted).

On balance, the Prossers' second issue on appeal weighs

neither in favor of, nor against, dismissal.

### b. Discovery Rule

Next, the Prossers identify issues concerning the

"Discovery Rule." The Prossers ask,

1. Did the Bankruptcy Court err and trample upon the Virgin Islands Public Policy by applying the Discover[y] Rule to judicially extend the Virgin Islands two-year limitation statute reach-back period (suit was filed February 8, 2008[7]) to January 1, 1999?

2. Regardless of the factual foundation, did the Bankruptcy Court err in applying the Discovery Rule to the case when the Plaintiffs/Appellees did not assert the application of the Discovery Rule in their Complaint?

(Statement of Issues, ECF No. 5.)

In the Virgin Islands, tort claims must be commenced within

two years from the accrual of the cause of action. 5 V.I.C. §

31(5)(A) (establishing a two-year statute of limitations to

"[a]n action for . . . any injury to the person or rights of

_____

[7] Appellants assert the "reach-back period" commences upon the date of suit.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 29

another not arising on contract and not [otherwise]

enumerated"). *See also Pemberton Sales & Serv., Inc. v. Banco*

*Popular de Puerto Rico*, 877 F. Supp. 961, 968 n. 18 (D.V.I.

1994). In certain cases, the running of the statute of

limitations period may be tolled by the application of the

Discovery Rule.

The Discovery Rule may toll the applicable statute of

limitations where the injury is latent or is not readily

ascertainable. *See Joseph v. Hess Oil,* 867 F.2d 179, 182 (3d

Cir. 1989). Under the Discovery Rule, the

applicable statute of limitations will not begin to toll until

"the plaintiff knew or should have known through the exercise of

reasonable diligence sufficient critical facts to put him on

notice that (1) he has been injured and (2) the actions or

inactions of a particular party could have been a cause of that

injury." *In re Tutu Wells Contamination Litig.,* 909 F. Supp.

980, 986 (D.V.I. 1995).

The Discovery Rule focuses not on "the plaintiff's actual

knowledge, but rather on 'whether the knowledge was known, or

through the exercise of diligence, knowable to' " the

plaintiff. *Bohus v. Beloff,* 950 F. 2d 919, 924 (3d Cir.

1991) (quoting *O'Brien v. Eli Lilly & Co.,* 668 F. 2d 704, 711

(3d Cir. 1981)). To demonstrate reasonable diligence, a

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 30

plaintiff must "establish [ ] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Mest v. Cabot Corp.,* 449 F.3d 502, 511 (3d Cir. 2006) (citation omitted; applying Pennsylvania law). "[W]here the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." *Burton v. First Bank of Puerto Rico,* Civ. No. 554-2005, 2007 V.I. LEXIS 19, 2007 WL 2332084 at *6 (V.I. Sup. Ct. July 19, 2007) (quoting *Vitalo v. Cabot Corp.,* 399 F. 3d 536, 543 (3d Cir. 2005)). "When the discovery rule applies ... [w]hether the statute of limitations has run on a claim is a question of law for the trial court to determine; but the question as to when a party's injury and its cause were discovered or discoverable is for the jury." *Donovan v. Idant Labs.,* 625 F. Supp. 2d 256, 266-67 (E.D. Pa. 2009) *aff'd sub nom. D.D. v. Idant Labs.,* 374 F. App'x 319 (3d Cir. 2010).

In its August 5, 2011, Opinion, the bankruptcy court determined that

> the evidence establishes that, without review of the internal books and records of New ICC, there was no way for the board or any creditor to discover the fraudulent transfers out of New ICC. Even if one or some of the creditors had access to the audited financial statements, the fact that New ICC was making

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 31

> transfers to or for the benefit of the Defendants is
> not explained and it is not evident. Because, as
> Jeffrey Prosser admitted, he totally controlled the
> board through his sole ability to replace board
> members and to constitute the boards, no one could
> reasonably have discovered the nature of the transfers
> until Jeffrey Prosser was no longer in control. That
> event occurred when the Chapter 11 Trustee was
> appointed in ICC-LLC's bankruptcy case on March 15,
> 2007 and in New ICC's bankruptcy case on October 4,
> 2007. Thus, the two year statute of limitations is
> deemed to commence on the date when the plaintiff
> could reasonably have discovered the fraud. Here, we
> found that to be no earlier than appointment of the
> Trustee, even for the transfers which occurred in
> 1999. The fraudulent conveyance action was filed on
> February 8, 2008, well within the two year time period
> from the date the fraud reasonably could have been
> discovered.

(Aug. 5, 2011, Bankr. Mem. Op. 110-11.)

A review of the factual scenario underlying the Bankruptcy
Division's determination makes it clear that this is not a case
where "the facts are so clear that reasonable minds can differ."
As such, the Bankruptcy Division's findings of fact as to its
application of the Discovery Rule will be reviewed for clear
error. *Williams v. Bank One Cleveland, NA* (*In re Dyac Corp.*),
1994 U.S. Dist. LEXIS 2611, at *5, 1994 WL 67952 (Bankr. N.D.
Ohio 1994).

The Bankruptcy Division ruled that the two-year statute of
limitations began to toll on the date when the Trustee was
appointed. The Bankruptcy Division reasoned that that is the
date when the plaintiff could reasonably have discovered the

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 32

fraud, because Jeffrey Prosser totally controlled the board
until that time and there was no way for the board or any
creditor to discover the fraudulent transfers without review of
New ICC's internal books and records. Finding no clear error
here, the Court finds that the Prossers' third issue on appeal
is not meritorious.

The Prossers also assert that the Bankruptcy Division erred
in applying the Discovery Rule when the parties did not raise
it. Whether the Bankruptcy Division could apply the Discovery
Rule sua sponte depends on whether it implicated a
jurisdictional issue. The "jurisdiction[al] issues will be
raised sua sponte by a federal court when there is an indication
that jurisdiction is lacking, even if the parties concede the
issue." *Thomas v. Basham*, 931 F.2d 521, 522-23 (8th Cir. 1991).

Generally, a statute of limitations is not a jurisdictional
bar. *Finn v. United States*, 123 U.S. 227 (1887).

> Time limitations analogous to a statute of limitations are
> subject to equitable modifications such as tolling, *see
> Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380,
> 1387 (3d Cir.1994), which "stops the running of the statute
> of limitations in light of established equitable
> considerations," *New Castle County v. Halliburton NUS
> Corp.,* 111 F.3d 1116, 1125 (3d Cir.1997). On the other
> hand, when a time limitation is considered jurisdictional,
> it cannot be modified and non-compliance is an absolute
> bar. *See Oshiver,* 38 F.3d at 1387. In determining whether a
> specific time limitation should be viewed as a statute of
> limitations or a jurisdictional bar, we look to
> congressional intent by considering the language of the
> statute, legislative history, and statutory purpose. *See*

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 33

> *Shendock v. Director, Office of Workers' Compensation*
> *Programs,* 893 F.2d 1458, 1462-64 (3d Cir.1990) (en banc).

*Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 617-18
(3d Cir. 1998) (determining that Antiterrorism and Effective
Death Penalty Act use of terms such as "period of limitation"
and "limitation period" and absence of the term "jurisdiction,"
as well as inclusion of a version of the discovery rule,
indicated that the drafters envisioned the provision to function
as a statute of limitations rather than a jurisdictional bar).

   Here, the Bankruptcy Division determined that the
fraudulent conveyance action sounded in tort, and thus a two-
year statute of limitations applied pursuant to 5 V.I.C. § 31(5)
(ECF No. 1-1. Bankr. Div. Mem. Op., citing *Fountain Valley*
*Corporation v. Wells*, 98 F.R.D. 679, 684 (D. V.I. 1983)). 5
V.I.C. § 31 specifically states that "Civil actions may *only be*
*commenced*" within the periods prescribed. This language is
unlike the language of the Antiterrorism and Effective Death
Penalty Act, which referred to a "limitation period" and "period
of limitation" without reference to "jurisdiction," and thus was
determined not to be jurisdictional. *Miller v. New Jersey State*
*Dep't of Corr.* 145 F.3d 616, 617-18 (3d Cir. 1998).[8] The

_____

[8] Although 5 V.I.C. § 31 makes reference to "a different
limitation" for special cases prescribed by statute, the

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 34

commanding language of the section that "[c]ivil actions *shall only be commenced*" indicates that the legislature meant this time limitation to be an absolute bar. 5 V.I.C. § 31, emphasis added.

Thus, the Bankruptcy Division did not err by sua sponte considering the Discovery Rule.

### c. Miscellaneous Issues

The Prossers also raise the following issues:

1.  Whether the Bankruptcy Court's finding[] that the Plaintiffs were real parties in interest (rather than the Chapter 7 Trustee of the Estate of Jeffrey J. Prosser) in light of the District Court's finding in Case No. 08-147 and the Bankruptcy Court's finding in the Turnover Opinion, Adversary No. 07-3010, findings that distributions from the ICC Entities[] to Mrs. Prosser were, in fact, distributions to Mr. Prosser followed by a transfer to Mrs. Prosser.

2.  Whether the Bankruptcy Court erred and trampled upon the Virgin Islands Public Policy and Federal Policy by failing to consider Mr. Prosser's duty of support?

(Statement of Issues, ECF No. 5.)

This first issue does not seem to ascribe any error. At best, arguably, it appears to suggest that the bankruptcy judge erred by finding the Prossers as the real parties in interest rather than the Chapter 7 Trustee.

---

absolute language in the previous clause strongly indicates that the drafters of the statute meant it to be jurisdictional.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 35

Under Rule 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a)(1); *Lefta Associates v. Hurley*, 902 F. Supp. 2d 559, 575 (M.D. Pa. 2012).

> The status of the plaintiff as the real party in interest is the threshold issue . . . . The Bankruptcy Code provides that: "The trustee in a case under [the Code] is the representative of the estate." 11 U.S.C. § 323(a). Causes of action belonging to the debtor at the time of petition belong to the bankruptcy estate. *Saellam v. Norfolk Southern Corp.*, No. 06-123, 2007 WL 1653737 at *3 (W.D.Pa. June 6, 2007). Thus, only the chapter 7 trustee is the real party in interest to pursue prepetition causes of action. Id. The debtor may pursue the claims if the trustee abandons them pursuant to 11 U.S.C. § 554. However, for abandonment to occur, the claim must either be formally abandoned by the trustee after "notice and a hearing," § 554(a)-(b), or it must have been properly scheduled under section 521(a)(1) and not administered, § 554(c).

*Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681, 689 (W.D. Pa. 2011). Here, the Bankruptcy Division does not appear to have substituted the Prossers for the Chapter 7 trustee as real parties in interest (ECF No. 1-1, Bankr. Div. Mem. Op). There is no basis to conclude that there is any merit to the Prossers' assertion.

The second issue appears to ask whether the Bankruptcy Division erred by failing to consider the duty to support. Domestic support obligations are exempt from discharge under 11 U.S.C.A. § 523(a)(5). "This section departs from the general policy of absolution, or 'fresh start', that is embodied in the

federal Bankruptcy Act. It enforces an overriding public policy favoring the enforcement of familial obligations."

*Shaver v. Shaver*, 736 F.2d 1314, 1315-16 (9th Cir. 1984).

"[I]n a trial on the merits, the creditor bears the burden of proving that a debt is nondischargeable under § 523(a) under a preponderance of the evidence standard, and "exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *Ins. Co. of Am. v. Cohn (In re Cohn),* 54 F.3d 1108, 1113 (3d Cir.1995); *see also Grogan,* 498 U.S. at 287-88, 111 S.Ct. 654. *In re Langman*, 465 B.R. 395, 403 (Bankr. D.N.J. 2012)

The Prossers failed to assert the issue of Jeffrey Prosser's duty of support in the bankruptcy proceedings below. As such, there is no basis to conclude that there is any merit to this issue.

### d. Insolvency of ICC Entities

The Prossers also raise issues related to the Bankruptcy Division's findings regarding insolvency of the ICC Entities. The Prossers ask whether Springel could meet his burden of proof without expert testimony and without establishing a fair value of assets. (Statement of Issues, ECF No. 5.)

"[B]oth § 548(b) and 547(b)(3) require the Plaintiffs to satisfy the burden of proving that the Debtor was "insolvent" at

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 37

the time of the transfers." *In re Labrum & Doak, LLP*, 227 B.R.

383, 387 (Bankr. E.D. Pa. 1998). The Bankruptcy Code test for

insolvency is

> "a 'financial condition such that the sum of such entity's
> debts is greater than all of such entity's property, at
> fair valuation,' exclusive of property exempted under § 522
> of the Code or fraudulently transferred. 11 U.S.C. §
> 101.31[1], at 101-74 [ (2d ed.1989) ]. The Code requires
> the use of a 'balance sheet' test for insolvency, comparing
> assets to debts.

*Id.*

Regarding the issue of expert testimony to prove

insolvency, "[T]he absence of an expert is not fatal to

[Plaintiff's] case . . . . It simply makes our job more

difficult." *Id.* at 388 (Bankr. E.D. Pa. 1998). The Bankruptcy

Division explained that it

> reviewed the American Express statements (Exhibit
> TT28) and the proof of payments by New ICC to American
> Express (Tabs 10 and 11 of Exhibit TT8). The analysis
> of the evidence reveals that New ICC was not the only
> source of payment for American Express transactions.
> Some statements reflect payments from multiple sources
> credited to the same statement. Payments did not
> always reflect the amount due on the invoice. At
> times, partial payments or overpayments were made.
> Sometimes, no payment was made before the due date.
> When a partial payment was made, the statement does
> not attribute the payment to particular transactions.
> An outstanding balance was simply carried to the next
> statement. When two payments toward the same statement
> activity were made resulting in an overpayment, it is
> not clear which transactions were satisfied by which
> funds. An overall credit is simply reflected on the
> following month's statement. *The Trustee produced no
> fact or expert evidence to explain how (or whether)*

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 38

> *there were any allocations. Therefore, we find that*
> *the Trustee may only seek avoidance and recovery where*
> *transactions for the benefit of the Adult Prosser*
> *Children were clearly paid with New ICC's funds.* Thus,
> unless New ICC paid the full invoice in one or a
> number of payments, the court has excluded any
> attribution of fraudulent conveyance to the
> Defendants. This effort to understand the Trustee's
> evidence resulted in literally months of time devoted
> by the court to reconciling the evidence, something
> that the Trustee, a partner in an investment banking
> firm, and his experienced counsel should have been
> able to provide through witnesses.

(Aug. 5, 2011, Bankr. Mem. Op. 21-22) (emphasis added).

To the extent that Springel should have relied on expert

testimony, the Bankruptcy Division made note of such neglect and

held any resulting confusion against Springel. Therefore, the

Court finds no clear error.

Regarding "fair value," the bankruptcy court explained,

> We have already concluded that reasonably equivalent
> value was not given in exchange for these transfers.
> See note 96 and discussion supra at 89-90. *In fact, we*
> *can identify no value provided in exchange and thus no*
> *"fair value" was given in exchange for the transfers*
> *to the Adult Prosser Children.*
>
> Because the Trustee so clearly established that the
> company intended or believed that it would incur debts
> beyond its ability to pay, we address only this ground
> for avoiding constructively fraudulent transfers
> pursuant to the applicable Virgin Island's law.

(Aug. 5, 2011, Bankr. Mem. Op. 104)

While the Bankruptcy Division may not have analyzed "fair

value" to the Prossers' satisfaction, it is clear from the

August 5, 2011, Opinion that the Bankruptcy Division did indeed

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 39

consider "fair value" in determining whether the burden of proof

had been met regarding insolvency. Therefore, the Court finds

that this issue is not meritorious.

### e. Application of 11 U.S.C. § 544

The Prossers suggest that the Bankruptcy Division erred in

applying 11 U.S.C. § 544. They ask whether the Bankruptcy

Division could apply that law without without a valid creditor.

(Statement of Issues, ECF No. 5.)

11 U.S.C. § 544 ("Section 544") addresses situations where

a Trustee functions as a lien creditor and as successor to

certain creditors and purchasers. Section 544 provides that

> (a) The trustee shall have, as of the commencement of
> the case, and without regard to any knowledge of the
> trustee or of any creditor, the rights and powers of,
> or may avoid any transfer of property of the debtor or
> any obligation incurred by the debtor that is voidable
> by—
>
> > (1) a creditor that extends credit to the debtor at
> > the time of the commencement of the case, and that
> > obtains, at such time and with respect to such
> > credit, a judicial lien on all property on which a
> > creditor on a simple contract could have obtained
> > such a judicial lien, *whether or not such a
> > creditor exists*;
> >
> > (2) a creditor that extends credit to the debtor at
> > the time of the commencement of the case, and
> > obtains, at such time and with respect to such
> > credit, an execution against the debtor that is
> > returned unsatisfied at such time, *whether or not
> > such a creditor exists*; or
> >
> > (3) a bona fide purchaser of real property, other
> > than fixtures, from the debtor, against whom

> applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
>
> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
>
> (2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) that is not covered under section 548(a)(1)(B), by reason of section 548(a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.

11 U.S.C.A. § 544 (West).

Section 544, by clear and unambiguous language, operates in full force and effect without a "valid creditor." Therefore, this issue is without merit.

### f. Recovery of Adrian Prosser's Employee Benefits

Finally, the Prossers inquire as to whether the bankruptcy court erred "by allowing recovery of Appellant Adrian Prosser normal, usual and customary employee benefits from Innovative Communication Corporation, its affiliates, and direct and indirect subsidiaries?" (Statement of Issues, ECF No. 5.)

As to this issue on appeal, the bankruptcy court found that

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 41

Based upon the books and records of New ICC, Ms. Christian determined that direct payments totaling $55,376.43 were made to Adrian Prosser *which did not relate to his employment by a subsidiary of New ICC*. Transcript of 11/18/2008, Adv. Doc. No. 111, at 87-111; TT60, at TT4 1820, 1823, 1828-29; Tab 2 of TT8. . . . However, *other payments were clearly personal*, and even Adrian Prosser testified he did not realize that they were payments from the corporation. Deposition of 12/19/2007, at 73-74. Thus, *he did not consider these payments as income for services provided through his employment and by his own admission, these were non-business payments*. The $55,376.43 in direct transfers to Adrian Prosser reflects payments for which the books and records of New ICC *contain no support to characterize these as business payments, and thus are not related to his employment by the subsidiary of New ICC*. See Testimony of Christian, Adv. Doc. No. 111, at 90-91. We agree with the Trustee that *these payments did not have a business purpose and find that funds unrelated to Adrian Prosser's employment* were transferred out of New ICC to him in the amount of $55,376.43.

Adrian Prosser was also the recipient of a wire transfer in the amount of $104,132.09 from the bank account of ICC-LLC on April 28, 2005. TT63, at TE2 01909. In his Amended Response to Plaintiff's First Request for Admissions, Adrian Prosser admitted that approximately $104,132.09 was paid to him by ICC-LLC on or about April 29, 2005, *which he used as a down payment on the purchase of a residence*, referred to as the West Palm Beach Condominium. TT86, at TE 02472-73. He understood the money to be a gift from his parents. *Id.* at 9-10. At his deposition on December 19, 2007, Adrian Prosser testified that he made a $120,000.00 down payment on the West Palm Beach Condominium. 12/19/2007 Deposition of Adrian Prosser, at 9. We find that the *funds provided by the ICC Debtors for the down payment on Adrian Prosser's home were non-business and personal in nature.*

In total, New ICC transferred $55,376.43 prepetition to Adrian Prosser, and ICC-LLC transferred $104,132.09 to Adrian Prosser prepetition, for a combined total of $159,508.52.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 42

. . . .

> *The company did not receive anything of value from the*
> *Adult Prosser Children in return for the funds*
> *transferred to or for their benefit.* Justin Prosser,
> Sybil Prosser, and Michelle LaBennett admitted that
> they were not employed by and they did not provide
> services to the ICC Debtors. *Adrian Prosser provided*
> *services to a subsidiary of New ICC for which he*
> *received compensation, but the Trustee is not seeking*
> *to avoid and recover those payments.* As to certain
> transfers which Adrian Prosser believed to be gifts
> from his parents, the funds were, in fact, transfers
> out of the ICC Debtors, which the Trustee is seeking
> to recover.

. . . .

> The Trustee is entitled to avoid and recover the
> following payments made during the two years
> prepetition pursuant to §§ 548(a)(1)(A) and 550:
> $161,695.40 from Justin Prosser, $205,359.93 from
> Sybil Prosser, $56,733.85 from Michelle LaBennett, and
> $104,132.09 from Adrian Prosser (relating to the
> transfer to him from ICC-LLC).

(Aug. 5, 2011, Bankr. Mem. Op. 43-46, 77-78, 87.)

The Bankruptcy Division allowed recovery of Adrian

Prosser's non-business compensation. That fact belies the

Prossers' argument that the Bankruptcy Division erroneously

allowed recovery of Adrian Prosser's employee benefits. Indeed,

the Bankruptcy Division was careful to distinguish between

customary benefits and benefits which were not "quid pro quo":

"Adrian Prosser provided services to a subsidiary of New ICC for

which he received compensation, but the Trustee is not seeking

to avoid and recover those payments." (Aug. 5, 2011, Bankr. Mem.

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 43

Op. 78.) Therefore, the Court finds that this issue on appeal is not meritorious.

## V. CONCLUSION

Of the six *Poulis* factors, five weigh in favor of dismissal. The Court takes into account the possibility that the Prossers' counsel may bear some of the responsibility for their failure to follow the Court's orders as well as the difficulty the Prossers have had finding replacement counsel. The Court also takes into account the possibility that there may be some merit to the Prossers' appeal. Nonetheless, on balance, the *Poulis* factors demonstrate that dismissal of this appeal is an appropriate sanction for the Prossers' failure to file their appellants' brief, or otherwise comply with this Court's orders. *See In re Buccolo*, 308 Fed. App'x 574, 576 (3d Cir. 2009) (finding that "even if the consideration of the merits of [the appellant's] claim or defense does not tip the scales for or against dismissal, it cannot be said that the District Court abused its discretion in concluding that *on balance*, dismissal was warranted.") (emphasis added); *In re E Toys Inc.,* 263 Fed. App'x at 238 (affirming the district court's ruling that the *Poulis* factors favored dismissal of a bankruptcy appeal as a sanction for the appellant's "repeated failures to adhere to ordered briefing deadlines").

*In re Innovative*
Civil No. 2012-51
Memorandum Opinion
Page 44


For the reasons discussed above, the Court will dismiss for failure to prosecute. An appropriate judgment follows.


S_____
**Curtis V. Gómez**
**District Judge**